■ WILLIAM OCASIO, Respondent, v MARGARET R. OCASIO et al, Respondents, and SCOTT HEYMAN et al., Appellants.—Appeal dismissed, with costs. Memorandum: This appeal, taken as of right, from an order of Family Court denying an application by compensated foster parents to intervene in a custody proceeding between natural parents, must be dismissed. Provisions for appeals from Family Court determinations are contained in article 11 of the Family Court Act. Section 1112 of that statute authorizes an appeal as of right only from an "order of disposition"; an appeal "from any other order" may be taken "in the discretion of the appropriate appellate division". "An 'order of disposition' is synonymous with a final order or judgment. *(Matter of Taylor v Taylor,* 23 AD2d 747.)" *(Firestone v Firestone,* 44 AD2d 671, 672.) It is apparent therefore that the scope of appeals which may be taken as of right under the Family Court Act provision is narrower than those which are authorized under CPLR 5701 (subd [a], par 2). The latter section permits appeals to be taken to the Appellate Division as of right from a variety of orders without regard to the finality of the order. Included in this group are orders that grant a new trial, affect a substantial right or in effect prevent a judgment from which an appeal might be taken (CPLR 5701, subd [a], par 2, cls [iii], [v], [vi]). To the extent that section 1112 of the Family Court Act requires finality as a prerequisite to appealability as of right, and necessitates permission granted by the Appellate Division in the exercise of its discretion for appeals from all other orders, the Family Court Act must prevail over CPLR 5701 (subd [a], par 2). (CPLR 101.) Since no application for leave to appeal was timely made, the appeal is not properly before us. If the matter were properly here, we would affirm the order of Family Court. The temporary surrender executed by the natural mother in favor of the Department of Social Services (following which placement of the child, Anita, was made with appellants) has since been revoked. Appellants assert no fact to establish that the natural parents have abandoned or are unfit to have custody of Anita. In this posture of the case the "paramount parental right to raise one's own child" *(Matter of Jewish Child Care Assn. of N. Y. [Sanders],* 5 NY2d 222, 230) identifies the natural parents as the persons with standing to litigate the question of custody. "The mother or father has a right to the care and custody of a child, superior to that of all others, unless he or she has abandoned that right or is proved unfit to assume the duties and privileges of parenthood." *(People ex rel Kropp v Shepsky,* 305 NY 465, 468.) When this proceeding was

instituted by the natural father to alter the custody provision of the divorce decree granted to him and the natural mother, by which custody of the child had been awarded to the mother, appellants, as compensated foster parents, had had Anita in their care for only nine months. In the circumstances described, appellants have failed to establish a right to intervene in the custody proceeding (*Matter of Spence-Chapin Adoption Serv. v Polk,* 29 NY2d 196; *Matter of Teeter v Pruiksma,* 47 AD2d 101, mot for lv to app den 37 NY2d 706; cf. Social Services Law, § 383, subd 3; § 392, subd 4). Finally, even if we were to accede to the urging of the dissenting Justices and recognize a discretion in Family Court to permit intervention prior to the expiration of the 24 months of custody after which a statutory privilege of participation attaches, we would not in this case disturb Family Court's determination to deny appellants' application. It does not appear that the best interests of the child require intervention, since a Law Guardian has been appointed and is participating to protect the child. All concur, except Cardamone and Mahoney, JJ., who dissent in accordance with the following memorandum: We dissent with respect to whether this case is properly before us. "An appeal may be taken to the Appellate Division as of right" in an action which "affects a substantial right" (CPLR 5701, subd [a], par 2, cl [v]; *Menoroff Realty Corp. v Kerr,* 38 AD2d 437, affd 32 NY2d 873) or "from any order of disposition" (Family Ct. Act, § 1112). Insofar as petitioners are concerned this order terminates their rights and is appealable as of right even under the more limited category of such cases proposed by the advisory committee (7 Weinstein-Korn-Miller, NY Civ Prac, par 5701.03, n 7, cl [ii]). Were this appeal not available and were the matter to proceed to its conclusion, petitioners would not be in a position to appeal because they were not parties to the action. Where the order in effect determines the case and prevents a judgment from which an appeal might be taken, it is appealable as of right (7 Weinstein-Korn-Miller, NY Civ Prac, par 5701.3, n 7, cl [vii]). Hence, this order of disposition affected "a substantial right" of petitioners and was, therefore, appealable as of right. Since their appeal was timely taken, the case is properly before us for disposition. With respect to the merits, unquestionably the law of New York places paramount importance on the primary right of a natural parent to the child's custody, denying to the courts the power to terminate it except where there has been abandonment of the child or where there is a statutory surrender outstanding or the unfitness of the natural parent has been established. The rule was stated by Judge Breitel in this fashion: "Child and parent are entitled to be together, unless compelling reason stemming from dire circumstances or gross misconduct forbid it in the paramount interest of the child". (*Matter of Spence-Chapin Adoption Serv. v Polk,* 29 NY2d 196, 199). The present status of the law is that foster parents, per se, have no right to intervene in a custody dispute between natural parents. Their duties with regard to the child placed with them for temporary care is custodial only. But the Legislature recognizing that long term continuous care even though temporary inevitably leads to the growth of strong emotional bonds has guaranteed foster parents intervention as of right after 24 months custody in any case—i.e., even against natural parents. In our view the granting of this right should not be construed, however, to deprive Family Court of discretion to permit intervention, in a proper case, prior to the expiration of 24 months and we recommend that Family Court so exercise its discretion. The law should be flexible enough in this area to permit such intervention where necessary in the best interest of the child. Appellants have presented a strong argument with respect to the alleged "dire circumstances" of

Anita, arguing that such a claim should open the door for foster parents to participate in custody disputes where the principal issue is fitness of the natural parents. There is no doubt that the statute contemplates that the Law Guardian serve to protect the best interests of the child, i.e., to make available to the court for its proper determination of custody all evidence relevant to the best interests of the child regardless of its impact on the tactical and personal concerns of the adult litigants. However, permitting intervention here would not substitute foster parents for duly appointed and acting Law Guardians but would merely add to the custody proceeding an additional party as a potential "champion" on behalf of the child's best interests. Indeed, this is the exact reason that prompted the enactment of subdivision 3 of section 383 and subdivision 4 of section 392 of the Social Services Law (Letter of Assemblyman Herbert A. Posner, dated May 10, 1972, regarding Assembly Bill No. 11371 to Michael Whiteman, counsel to the Governor). Normally, prior to the satisfaction of the 24-month requirement the foster parents should act through the Law Guardian; permissible intervention before 24 months, however, would serve as a fail-safe option in those cases where the Law Guardian chooses not or is unable to produce all the relevant information pertaining to the best interests of the child, the duty that the statute places on the Law Guardian in the first instance. Certainly, the testimony of the foster parents is highly relevant and they, having been most recently in the closest contact with the child, would have the current and pertinent factual information available for the court's consideration. For example, in this case there is in the record an unrefuted medical affidavit which clearly warns of the "extremely dangerous threat to the child's mental health" prognosticating the probability of a psychotic state in the infant and a deterioration of her mental, emotional and physical health. Where "dire circumstances" to the child are so clearly spelled out, intervention should not be prohibited by unnecessarily restrictive interpretations of the statutes or case law. Rather, our legal system should be flexible enough to protect the primary right of natural parents and yet at the same time give full and complete consideration to the best interests of an individual child whose future is at stake in the custody dispute being litigated between its natural parents. (Appeal from order of Onondaga County Family Court denying intervention in custody proceeding.) Present.—Moule, J. P., Cardamone, Simons, Mahoney and Del Vecchio, JJ.