[680 NYS2d 683]

In the Matter of BOARD OF EDUCATION OF THE CITY SCHOOL DISTRICT OF THE CITY OF NEW YORK, Appellant, v RICHARD P. MILLS, as Commissioner of Education of the State of New York, et al., Respondents. (And Another Related Proceeding.)

Third Department, November 12, 1998

## APPEARANCES OF COUNSEL

*Michael D. Hess, Corporation Counsel* of New York City (*Steven J. Rappaport* of counsel), for appellant.

*Dennis C. Vacco, Attorney-General,* Albany (*Patrick Barnett-Mulligan* and *Robert A. Siegried* of counsel), for Richard P. Mills, respondent.

*Malvina Nathanson,* New York City, for Andrew Cadet, respondent.

*O'Hara & O'Connell,* Syracuse (*Dennis G. O'Hara* of counsel), for New York State Council of School Superintendents, *amicus curiae.*

*James D. Bilik,* Albany, for New York State United Teachers, *amicus curiae.*

## OPINION OF THE COURT

SPAIN, J.

In June 1990 the position of Special Commissioner of Investigation (hereinafter SCI) was created by a resolution of petitioner pursuant to Executive Order No. 11 of the Mayor of the City of New York (hereinafter the Executive Order), the City Charter and Education Law § 2554. The SCI was given the responsibility and authority to investigate "unethical conduct and other misconduct" within the New York City school system. Both the resolution which established the SCI and the Executive Order mandate full cooperation by all school district employees with the SCI during all investigations; they further provide that if an employee refuses to answer questions during an SCI investigation, the employee must be advised that any answer given and any information or evidence derived therefrom shall not be used against the employee in a criminal proceeding except in a prosecution for perjury or contempt. After being so advised, refusal by a school district employee to answer questions constitutes failure to cooperate with the investigation and is sufficient cause for dismissal.

In April 1991 the SCI received an anonymous letter alleging that respondent Andre Cadet, a physical education teacher at Julia Richman High School, was having an inappropriate relationship with a female student. An initial investigation revealed that Cadet had, in fact, formed a romantic relationship with the student. During the course of the investigation Cadet refused to be interviewed by a confidential investigator for the SCI. In June 1991 Cadet was subpoenaed to appear at the office of the SCI to give testimony during a prehearing inquiry concerning his relationship with the student. Cadet appeared with his attorney and, prior to being questioned, was informed that he had an obligation to cooperate with the investigation, that he was being granted use immunity and that if he failed to answer questions at this stage of the proceeding, his refusal would be construed as a failure to cooperate and would subject him to dismissal. In spite of having been granted use immunity, Cadet answered only pedigree and background questions, refusing to answer any questions regarding his relationship with the student.

Thereafter, petitioner found probable cause to prefer disciplinary charges against Cadet pursuant to Education Law § 3020-a, seeking his termination. Cadet was charged with inappropriate contact with a female student by having a romantic relationship with her and with uncooperative, disobedient and insubordinate behavior by refusing to answer questions regarding the performance of his official duties during a sworn examination by the office of the SCI.

A disciplinary hearing pursuant to Education Law § 3020-a was held at which a number of witnesses testified. The Hearing Panel determined that Cadet had committed misconduct by engaging in a romantic relationship with one of his students. However, the Hearing Panel also determined that, although Cadet did not respond to the SCI's questions after being given use immunity, such conduct did not constitute insubordination. The Hearing Panel noted that Education Law § 3020-a, which provides that an employee shall not be required to testify at his or her disciplinary hearing, conflicted with the Executive Order and petitioner's resolution and, under the principles of home rule, Education Law § 3020-a was controlling; therefore, Cadet could not be required to testify at the hearing or during the investigation leading up to such a proceeding. The Hearing Panel concluded that, despite its determination of misconduct with respect to Cadet's behavior with the student, he remained fit for continued service; it further concluded that Cadet should

be suspended for a period of one half of the regular teaching year without pay.

Both petitioner and Cadet appealed the determination to respondent Commissioner of Education. The Commissioner concluded that Education Law § 3020-a was the sole means through which a teacher could be disciplined and agreed with the Hearing Panel that this provision was in conflict with both the Executive Order and petitioner's resolution. Finding that State law was controlling in such an instance due to the home rule provisions of the State Constitution, the Commissioner upheld the Hearing Panel's negative determination with regard to the charge of insubordination. The Commissioner also upheld the Hearing Panel's determination regarding Cadet's inappropriate relationship with the student; however, the Commissioner determined that the penalty imposed by the Hearing Panel was too lenient and substituted a penalty of a three years' suspension without pay.

Petitioner and Cadet then commenced separate CPLR article 78 proceedings to challenge the determination of the Commissioner. Supreme Court dismissed both petitions, agreeing with the Commissioner that Education Law § 3020-a is in conflict with the Executive Order and petitioner's resolution and that the State law is controlling in such instances, particularly when read with Municipal Home Rule Law § 11 (1) (c) and NY Constitution, article IX, § 3 (a) (1). Supreme Court also concluded that the penalty imposed by the Commissioner was reasonable and not an abuse of discretion. Petitioner and Cadet both appealed; Cadet has now withdrawn his appeal.

We affirm. The Commissioner has the power to interpret statutes and provide guidelines with regard to their construction (*see*, Education Law § 305 [1], [2]). Notably, "[i]t is a cardinal principle of construction that, '[i]n case of doubt, or ambiguity, in the law it is a well-known rule that the practical construction that has been given to a law by those charged with the duty of enforcing it * * * takes on almost the force of judicial interpretation'" (*Matter of Lezette v Board of Educ.*, 35 NY2d 272, 281, quoting *Town of Amherst v County of Erie*, 236 App Div 58, 61, *affd* 260 NY 361, 369-370). As such, upon review, the court's function is limited because "[i]t is well settled that the construction given statutes and regulations by the agency responsible for their administration, if not irrational or unreasonable, should be upheld" (*Matter of Howard v Wyman*, 28 NY2d 434, 438; *accord, Matter of Lezette v Board of Educ.*, *supra*, at 281-282; *cf., Matter of Johnson v Joy*, 48 NY2d

689, 691). Thus, the standard of review "is whether [the Commissioner's] determination 'was made in violation of lawful procedure, was affected by an error of law or was arbitrary and capricious or an abuse of discretion'" (*Matter of Conley v Ambach*, 61 NY2d 685, 687, quoting CPLR 7803 [3]; *see, Matter of Cargill v Sobol*, 165 AD2d 131, 133, *lv denied* 78 NY2d 854). Although local governments have the power to enact laws or regulations, such regulations must be consistent with both the NY Constitution and the general laws enacted by the Legislature (*see,* NY Const, art IX, § 2 [c]); no local legislative body is empowered to enact laws or regulations which supersede State statutes, particularly with regard to the "maintenance, support or administration of the educational system" (Municipal Home Rule Law § 11 [1] [c]).

Education Law § 3020-a (3) (c) (i) was properly construed to be in conflict with petitioner's resolution requiring that employees answer questions during prehearing investigations or be subject to dismissal for insubordination. Significantly, petitioner does not dispute that any information gathered during the prehearing investigation would be admissible at the disciplinary hearing. Therefore, even if an employee chose not to testify at the hearing, his or her prehearing statements to the SCI would be admissible as admissions against interest. Clearly, this contravenes Education Law § 3020-a which provides a significant protection, that of shielding employees against testifying against themselves in a proceeding in which their job rights are in jeopardy. In our view, the Commissioner's interpretation of the laws was rational and reasonable and should not be disturbed.

Finally, we find no error on the part of the Commissioner with respect to the penalty imposed. "It is now well settled that an administrative penalty is not to be set aside * * * unless it is so 'clearly disproportionate to the offense and completely inequitable in light of the surrounding circumstances' (*Kostika v Cuomo*, 41 NY2d 673, 676) as to be 'shocking to one's sense of fairness' (*Matter of Pell v Board of Educ.*, 34 NY2d 222, 233)" (*Matter of Nino v Yonkers City School Dist.*, 43 NY2d 865, 866; *see, Matter of Harris v Mechanicville Cent. School Dist.*, 45 NY2d 279, 285). In light of the circumstances of this case as presented in the record, including the observations of the Hearing Panel and the Commissioner and the limited nature of the inappropriate relationship allegation as set forth in the charge (*see, Matter of Caravello v Board of Educ.*, 48 AD2d 967, 969), we reject petitioner's contention

that the penalty imposed upon Cadet was so grossly dispropor-tionate to the offense as to shock one's conscience and sense of fairness.

MERCURE, J. P., WHITE, PETERS and GRAFFEO, JJ., concur.

Ordered that the judgment is affirmed, without costs.