■ In the Matter of GABRIEL B.S.-P. SUFFOLK COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; FRANKLIN S., Appellant. (Proceeding No. 1.) In the Matter of NOWELL S. SUFFOLK COUNTY DEPARTMENT OF SOCIAL SERVICES, Respondent; FRANKLIN S., Appellant. (Proceeding No. 2.) [25 NYS3d 250]—

Appeal from an order of fact-finding and disposition of the

Family Court, Suffolk County (David Freundlich, J.), dated September 26, 2014. The order, after fact-finding and dispositional hearings, found that the father permanently neglected the subject children, terminated his parental rights, and transferred the guardianship and custody of the children to the Suffolk County Department of Social Services for the purpose of adoption.

Ordered that the order of fact-finding and disposition is reversed, on the facts, without costs or disbursements, the petitions are denied, and the proceedings are dismissed.

The subject children were born on August 21, 2011, and January 30, 2013, respectively. The older child was removed from the mother's custody by the Suffolk County Department of Social Services (hereinafter DSS) in May 2012 due to the mother's substance abuse and untreated mental illness. Upon his birth, the younger child was immediately removed from the mother's custody.

DSS commenced proceedings pursuant to Family Court Act article 10 against the mother after each child was removed from the mother's residence as a result of the mother testing positive for benzodiazepine. The children's father, who lived with the mother at the time the children were removed, was not named as a respondent in either proceeding brought against the mother. After the removal of the older child, however, an order of protection was issued against the father, directing that he have no contact with that child except for visits supervised by DSS or the attorney for the children. After the proceedings were commenced against the mother, the father pursued unsupervised visitation or custody of the children. However, his petitions were dismissed without a hearing.

On January 15, 2014, the mother executed a judicial surrender for the older child, conditioned on the foster parents' adoption of him. In February 2014, DSS commenced a proceeding to terminate the father's parental rights with respect to the older child on the ground of permanent neglect. In May 2014, DSS commenced a separate proceeding to terminate the father's parental rights with respect to the younger child based upon allegations of permanent neglect. The mother executed a judicial surrender on September 9, 2014, for the younger child under the same terms as the surrender for the older child. Following fact-finding and dispositional hearings, the Family Court found that the father permanently neglected the children, terminated his parental rights, and transferred the guardianship and custody of the children to DSS for the purpose of adoption. The father appeals. We reverse.

Social Services Law § 384-b (7) (a) defines a " 'permanently neglected child' " as: "a child who is in the care of an authorized agency and whose parent or custodian has failed for a period of either at least one year or fifteen out of the most recent twenty-two months following the date such child came into the care of an authorized agency substantially and continuously or repeatedly to maintain contact with or plan for the future of the child, although physically and financially able to do so, notwithstanding the agency's diligent efforts to encourage and strengthen the parental relationship when such efforts will not be detrimental to the best interests of the child."

In proceedings to terminate parental rights based on permanent neglect, the agency must first establish, by clear and convincing evidence, that it made diligent efforts to encourage and strengthen the parental relationship with the child (*see* Social Services Law § 384-b [7] [a]; *Matter of Star Leslie W.*, 63 NY2d 136, 142 [1984]; *Matter of Jamie M.*, 63 NY2d 388, 394 [1984]; *Matter of Sheila G.*, 61 NY2d 368, 384 [1984]). The efforts must include reasonable attempts at providing counseling, scheduling regular visitation with the child, providing other services to the parent to overcome the particular problems that separated the parent from his or her child, and informing the parent of his or her child's progress (*see* Social Services Law § 384-b [7] [f]; *Matter of Star Leslie W.*, 63 NY2d at 142; *Matter of Davina R.M.R.L. [Jennifer A.]*, 123 AD3d 1126, 1127 [2014]; *Matter of Austin A.*, 243 AD2d 895, 896-897 [1997]). The court "also shall consider the particular constraints, including but not limited to, limitations placed on family contact and the unavailability of social or rehabilitative services to aid in the development of a meaningful relationship between the parent and his or her child, that may impact the parent's ability to substantially and continuously or repeatedly maintain contact with his or her child and to plan for the future of his or her child" (Social Services Law § 384-b [7] [a]).

Here, DSS failed to meet its initial burden of demonstrating that it exercised diligent efforts to strengthen the parental relationship between the father and his children (*see Matter of Sheila G.*, 61 NY2d at 387-389; *Matter of Olivia L.*, 41 AD3d 1226, 1226 [2007]; *Matter of Joshua R.*, 2 AD3d 528, 528 [2003]; *see also Matter of Gregory A.J. [Gregory J.]*, 127 AD3d 972 [2015]; *Matter of Elijah M.A. [Mohammed A.]*, 112 AD3d 708, 709 [2013]). DSS's evidence demonstrated that its caseworkers' focus was on the mother's relationship with the children, as she was the initial subject of the proceedings and the father was not a party thereto. Further, although the evidence ad-

duced at the fact-finding hearing showed that the DSS caseworkers advised the father to seek unsupervised visitation with the children since the supervised visits were positive, the evidence also showed that DSS did not support such unsupervised visitation and was aware that the father's access to the children was limited by the order of protection. Moreover, although DSS scheduled supervised visits between the father and the children and provided the father with notices of regularly scheduled permanency hearings and service plan reviews, it did little more to determine the particular problems facing the father with respect to the return of his children and did not make affirmative, repeated, and meaningful efforts to assist him in overcoming these handicaps before it commenced these proceedings (see Matter of Sheila G., 61 NY2d at 385). Further, DSS's evidence demonstrated that the father satisfied all requests that DSS made of him, which included attending a parenting class and marriage counseling, and showed himself to be a loving and appropriate parent at the supervised visitation sessions.

Accordingly, the Family Court erred in adjudicating the children permanently neglected by the father and terminating his parental rights (see Matter of Sheila G., 61 NY2d at 387-389; Matter of Olivia L., 41 AD3d at 1226; Matter of Joshua R., 2 AD3d at 528).

In light of our determination, we need not address the father's remaining contention. Mastro, J.P., Leventhal, Austin and LaSalle, JJ., concur.